**UNITED STATES of America, Plaintiff,**

v.

**Ronnie BRYSER and Vincent DeGerolamo, Defendants,**

**Gerald DeGerolamo, Defendant– Appellant.**

**No. 1587, Docket 95–1571.**

United States Court of Appeals, Second Circuit.

Argued May 24, 1996.

Decided Sept. 9, 1996.

Richard D. Willstatter, Green & Willstatter, White Plains, New York, for Defendant–Appellant.

Anthony J. Siano, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, John M. McEnany, Assistant United States Attorney, of counsel), for Plaintiff.

Before: KEARSE, WINTER and CALABRESI, Circuit Judges.

WINTER, Circuit Judge:

Gerald DeGerolamo appeals from a resentencing after a second remand by this court. DeGerolamo challenges a five-level upward departure in his sentencing. We affirm.

## BACKGROUND

The underlying facts were set forth at length in our opinion affirming the convictions of DeGerolamo and his co-defendants and vacating their sentences and remanding for resentencing. *United States v. Bryser* (*"Bryser I"*), 954 F.2d 79 (2d Cir.), *cert. denied*, 504 U.S. 972, 112 S.Ct. 2939, 119 L.Ed.2d 564 (1992). We assume familiarity with that opinion and therefore recite only briefly the history of this case.

DeGerolamo and two others were convicted on all counts of a seventeen-count indictment arising from the November 12, 1989 theft of $3,744,567.58 from the vault of Hercules Security Unlimited, Inc., an armored car company that they owned and operated. In the defendants' first sentencing, Judge Broderick departed upwardly from the Guidelines sentence range, finding that the Sentencing Commission had not " 'give[n] adequate consideration to the situation where defendants having taken money still have that money and obviously plan to have recourse to that money upon their release from prison.' " *Bryser I*, 954 F.2d at 89 (quoting district court's finding). DeGerolamo received a sentence of 97 months in prison, a three-year term of supervised release, a $10,000 fine, restitution of $3,744,567.58, and special assessments in the amount of $850. *Id.* at 81.

We affirmed the convictions. We also agreed that the Sentencing Commission had not adequately considered situations in which defendants conceal stolen money in order to enjoy the proceeds of their crimes upon release and that an upward departure was

therefore permissible as a matter of law. *Id.* at 89. However, we held that the district court had not made adequate findings of fact to support the particular departure and that the defendants should be given an opportunity to present evidence of their current lack of control over the money. *Id.* at 90. We therefore vacated the sentences and remanded for resentencing. *Id.* at 90–91.

Before resentencing, DeGerolamo applied for, and was granted, authorization under the Criminal Justice Act to hire an investigator to assist in acquiring records regarding the disposition of the stolen money, 18 U.S.C. § 3006A(e)(1)(1994). DeGerolamo also moved for a grant of use immunity for testimony he might give at the resentencing proceeding and a ruling that an offer of proof in that regard would not constitute a waiver of his privilege against self-incrimination. Apparently without granting or denying the request for immunity, the district court held that the offer of proof would not waive the privilege. *United States v. Bryser*, 857 F.Supp. 306, 307–08 (S.D.N.Y.1994).

In resentencing DeGerolamo on September 14, 1994, Judge Broderick ruled that the issue to be resolved was not whether DeGerolamo still had control over the proceeds of the theft but rather whether restitution had been made. Because there had been no restitution, he reimposed the original sentence. DeGerolamo appealed again, and we again concluded that a finding regarding DeGerolamo's current control over the stolen money was a prerequisite to the upward departure. *United States v. Bryser*, No. 94–1500, 54 F.3d 766 (2d Cir. April 20, 1995). As a result, we remanded again for resentencing. *Id.*

The second resentencing was before Judge Parker, to whom the case had been reassigned after Judge Broderick's death. At this hearing, DeGerolamo renewed a letter offer of proof submitted at his earlier resentencing. This letter stated that DeGerolamo gave $1,820,000 to two unnamed individuals and spent most of the remaining money—over $1,000,000 cash—on gambling sprees, including nearly $500,000 at the Claridge Casino in Atlantic City. The letter maintained that DeGerolamo had burned $10,000 in new bills in order to avoid apprehension. DeGer-

olamo also offered to testify and moved for a judicial grant of use immunity for that testimony. The district court denied the motion.

DeGerolamo then made a supplementary, oral offer of proof, in which he offered to testify that he gave a total of $1,820,000 to two persons who had invested in the criminal enterprise but whom he feared to name in open court. In addition, he submitted to the court documents that he claimed to be: records from casinos, insurance records showing that at least $250,000 of the amount stolen was in checks, a credit report showing that DeGerolamo owed substantial debts, bank records indicating the disbursal of $11,000, a record from a pool-construction company showing the payment of some $14,000 on a $20,000 contract, which counsel claimed was eventually paid in full, a letter from co-defendant Ronnie Bryser with amounts he received, and records from prior counsel to DeGerolamo with amounts received. DeGerolamo declined an opportunity to present witnesses.

The government offered a March 9, 1992 FBI report of a March 2, 1992 interview with DeGerolamo according to which DeGerolamo had claimed that, after paying "his investor" $350,000, DeGerolamo had received only $670,000, which thereafter found its way into the coffers of the Claridge Casino in Atlantic City.

DeGerolamo then indicated that he wanted to have the investigator reappointed so that he could testify about the authenticity of the records. Counsel conceded that as an alternative he "could have proceeded to subpoena [the casino people to whom the investigator had spoken] back when the application was denied." Judge Parker, noting that much of the investigator's work had been done and that Judge Broderick had refused to authorize payment on the supplemental voucher application, denied the application. In resentencing, Judge Parker expressed doubts about DeGerolamo's credibility based on the story that he burned $10,000 in cash; found a lack of substantiation for the payments to the unnamed individuals, the casinos, and the pool-builder; and noted a general absence of credible testimony establishing DeGerolamo's lack of continuing control over the sto-

len money. Judge Parker found that DeGerolamo had not met his burden of showing by a preponderance of evidence that he no longer possessed or controlled the money. Accordingly, Judge Parker reimposed the original sentence. This third appeal followed.

## DISCUSSION

In this appeal, DeGerolamo principally argues that the district court abused its discretion in refusing to reappoint a private investigator and erred in denying use immunity for DeGerolamo's testimony at resentencing.[1] We reject each of these claims.

### A. *Reappointment of the Investigator*

■ DeGerolamo contends that the district court's refusal to reappoint a private investigator under the Criminal Justice Act violated his Fifth Amendment due process rights and Sixth Amendment right to counsel. We disagree.

The applicable provision, 18 U.S.C. § 3006A(e)(1) (1994), provides for the appointment of "investigative, expert, or other services necessary for adequate representation." In this case, all of the necessary investigative work had been done almost two years before, and counsel merely sought to prove the provenance of the records in question. By counsel's own admission, this end could have been accomplished by calling witnesses previously identified by the investigator. The district court did not, therefore, abuse its discretion—much less violate the Constitution—in determining that there was no reasonable basis for needing further services by the investigator. Due process does not require an appearance by an investigator, rather than other witnesses with equal or greater knowledge of the facts, in such a situation.

DeGerolamo's right to counsel argument is based on the asserted need of counsel to

testify absent the services of an investigator. However, since DeGerolamo could have "proceeded to subpoena [the investigator's sources] back when the application was denied," but chose not to, counsel was not forced to testify and also represent his client at the same time. The refusal to reappoint the investigator, therefore, had no impact on DeGerolamo's right to counsel.

### B. *Use Immunity*

DeGerolamo also argues that the district court improperly refused to grant him use immunity at the second resentencing, forcing him to choose between taking the stand in his own defense and incriminating himself through his testimony. He asks us to find a constitutionally impermissible tension between his due process right to present a defense and the privilege against self-incrimination. We perceive no such tension.

■ The government argues as an initial matter that the claim is barred by the mandate rule because it could have been asserted on his earlier appeals. We disagree. The mandate rule flows from the law-of-the-case doctrine. Under the rule, a district court is " 'barred from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals.' " *United States v. Minicone*, 994 F.2d 86, 89 (2d Cir. 1993) (quoting *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir.1991)), *cert. denied*, —— U.S. ——, 115 S.Ct. 344, 130 L.Ed.2d 300 (1994).

On DeGerolamo's first appeal, we rejected an unrelated Fifth Amendment point—whether turning over the proceeds of the crime would constitute self-incrimination—on the ground that production of the money would not incriminate DeGerolamo of any crime for which he had not already been convicted. *See Bryser I*, 954 F.2d at 89–90. DeGerolamo's burden of demonstrating how he lost control of the money arose only after

---

1. DeGerolamo also argues that Judge Parker relied upon Judge Broderick's decision to depart upwardly and did not adequately state his—Judge Parker's—reasons for doing so. The government argues that this claim is barred by the mandate rule because it was not raised on either of the earlier appeals. *See United States v. Stanley*, 54 F.3d 103, 107 (2d Cir.) *cert denied*, ——

U.S. ——, 116 S.Ct. 238, 133 L.Ed.2d 166 (1995). We need not address the mandate rule issue, because it is clear on the record that Judge Parker found in great detail that DeGerolamo had failed to carry his burden regarding disposal of the money and believed that DeGerolamo's continued access to the funds warranted the particular departure.

we remanded with instructions to afford De-Gerolamo an opportunity to address this question. This burden, unlike the surrender of money, raised for the first time the possibility of self-incrimination with respect to new charges, such as money-laundering.

Nor does the mandate rule apply to De-Gerolamo's failure to raise the use immunity issue on his second appeal. The record does not support the proposition advanced by the government that Judge Broderick denied De-Gerolamo's motion for a judicial grant of use immunity for his testimony. The sentencing transcript indicates that the government eventually stipulated that it would not seek to use DeGerolamo's oral statements at the first resentencing hearing against him. There was, therefore, no reason for DeGerolamo to raise the issue on his second appeal. At the second resentencing, however, from which the present appeal arose, the government opposed the grant of use immunity for oral testimony. In our view the issue is now on review for the first time.

DeGerolamo argues that a judicial grant of use immunity is required because he faced a choice between risking further prosecution by testifying or foregoing the benefits of testifying by invoking the privilege against self-incrimination. DeGerolamo relies principally on *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), in which the Supreme Court held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Id.* at 394, 88 S.Ct. at 976. In that case, a defendant had testified in support of a motion to suppress evidence discovered in the course of a search of his suitcase. *Id.* at 381, 88 S.Ct. at 969–70. The testimony was later used at trial to prove his ownership of the suitcase, which contained money-wrappers from a bank robbery. *Id.* at 381, 389–91, 88 S.Ct. at 969–70, 973–75. The Supreme Court reasoned that, because the defendant's testimony was "an integral part of his Fourth Amendment exclusion claim," *id.* at 391, 88 S.Ct. at 975, and because the prospect of having his testimony used against him at

trial would deter the bringing of such a claim, *id.* at 392–94, 88 S.Ct. at 975–76, the defendant faced an "intolerable" choice between surrendering the Fourth Amendment claim or waiving his Fifth Amendment privilege against self-incrimination, *id.* at 394, 88 S.Ct. at 976. The Court's remedy was to require a grant of judicial use immunity for the testimony at the suppression hearing. *Id.*

We have ordered use immunity under *Simmons* upon a showing of substantial tension between a defendant's desire to testify in a hearing that adjudicates a claim of constitutional right in a criminal case and the right of that defendant not to give testimony that is incriminating as to the charge in question. For example, in *United States v. Branker,* 418 F.2d 378 (2d Cir.1969), we held that "the government should not be permitted to use as part of its direct case any testimony given by a defendant at a hearing where he is seeking *forma pauperis* relief or the assignment of counsel on the ground of his financial inability to pay court costs, to procure the minutes, or to secure counsel." *Id.* at 380. Noting the parallel to *Simmons* and the importance of the constitutional right to counsel, *id.* at 381, we applied *Simmons* to prevent defendants from being deterred from making applications for the assignment of counsel. *Id.* at 380–381. *See also United States v. Harris,* 707 F.2d 653, 662–63 (2d Cir.) (applying *Branker*), *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983).

■ DeGerolamo argues that he faced a similarly intolerable tension between his due process right to present evidence at the resentencing and his Fifth Amendment privilege against self-incrimination. However, DeGerolamo's potentially incriminating testimony relates to crimes other than those charged in the instant proceeding, that is, crimes involving the disposition, rather than theft, of the money. This is a crucial distinction. It is one thing to allow a defendant charged with bank robbery to testify as to an expectation of privacy in a suitcase without risking that the testimony will be used against him in the trial on that charge. It is quite another thing to say that such testimo-

ny may not be used to prosecute other crimes. What DeGerolamo describes as a penalty for testifying penalizes only those who have committed crimes other than those in the proceeding at hand.

■ We decline to extend *Simmons* to afford use immunity for testimony concerning crimes other than those charged in the underlying criminal proceeding. *Simmons* in no way leads to the absurd result that incriminating statements may not be used as evidence because they were made otherwise in aid, or under the umbrella, of a constitutional right. *See, e.g., United States v. Baker,* 655 F.Supp. 1040, 1042–43 (D.Or. 1987) (*Simmons* does not prevent use in superseding indictment of defendant's admission of other crime in testimony at trial that ended in mistrial), *aff'd,* 850 F.2d 1365 (9th Cir.1988). Ancillary "losses" of constitutional rights may often attend the commission of criminal acts. The admission of incriminating statements by a city-park soapbox orator as evidence of criminal acts by the speaker is not regarded by sensible people as illegitimately chilling the exercise of First Amendment rights. Nor would anyone regard the due process right to present a defense as illegitimately chilled where a defendant's alibi evidence would involve his testimony as to a different crime at the same time. We thus reject DeGerolamo's *Simmons* argument.[2]

Affirmed.

**2.** Relying as he does on *Simmons,* DeGerolamo does not claim that his case meets the three-part test we developed in *United States v. Burns,* 684 F.2d 1066, 1077 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983), for determining when a court should require the government to grant use immunity to a defense witness or face dismissal of the indictment. According to the *Burns* test, the district court must find: (i) that the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment; (ii) that the witness's testimony will be material, exculpatory and not cumulative; and (iii) that the testimony is not available from any other source. *Id. See also United States v. Bahadar,* 954 F.2d 821, 826 (2d Cir.), *cert. denied,* 506 U.S. 850, 113 S.Ct. 149, 121 L.Ed.2d 101 (1992); *United States v. Pinto,* 850 F.2d 927, 935 (2d Cir.), *cert. denied,* 488 U.S. 932, 109 S.Ct. 323, 102 L.Ed.2d 341 (1988); *United States v. Calvente,* 722 F.2d 1019, 1025 (2d Cir.1983), *cert. denied,* 471 U.S. 1021, 105 S.Ct. 2030, 85 L.Ed.2d 313 (1985). DeGerolamo has not shown that any one of these parts of the *Burns* test is satisfied, let alone all three.