2020 UT App 63

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
STEVEN NORMAN POWELL,
Appellant.

Opinion
No. 20180109-CA
Filed April 16, 2020

Third District Court, Salt Lake Department
The Honorable Mark S. Kouris
No. 151913515

Ronald Fujino, Attorney for Appellant

Sean D. Reyes and Jeffrey S. Gray,
Attorneys for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and DIANA HAGEN concurred.

POHLMAN, Judge:

¶1　In 2017, Steven Norman Powell was convicted of two counts of lewdness, with enhancements for prior convictions. Powell challenges his convictions, arguing that the trial court erred when it denied his motion for a directed verdict and that his trial counsel provided constitutionally ineffective assistance. He also moves this court pursuant to rule 23B of the Utah Rules of Appellate Procedure to remand his case to the trial court for the entry of findings of fact to support a determination that his trial counsel performed ineffectively. We deny Powell's rule 23B motion and affirm his convictions.

BACKGROUND[1]

¶2 Powell's lewdness convictions arise from two separate instances at two separate stores where the same two witnesses, a woman (Daughter) and her stepmother (Stepmother), observed, by sheer coincidence, Powell in his wheelchair with his genitals exposed. Daughter testified at trial that, on both occasions, Powell was in a wheelchair wearing jeans where the crotch area was "cut out" and that, although there was some kind of material covering Powell's genital area, it was "[v]ery see-through" with "holes." She stated that in both instances, she was able to see his penis through the material.

¶3 Stepmother testified that, in the first incident, she also observed Powell in his wheelchair wearing jeans where "the crotch was cut out," that there was some black, see-through mesh over his genitals, and that she saw his penis through the material. As to the second incident, Stepmother testified that as she tried to take a picture of Powell to send to law enforcement, he saw her doing so and "grabbed [a] pair of pants" next to him to cover himself.[2] Following the second encounter, Stepmother reported the incident on the local police department's social media page.

¶4 Approximately nine months later, a detective (Detective) began investigating the complaint. As part of his investigation,

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Bowden*, 2019 UT App 167, ¶ 2 n.1, 452 P.3d 503 (cleaned up).

2. Stepmother's photograph shows Powell covering his crotch with the leg of a pair of pants hanging on a nearby display hook.

Detective sought surveillance videos from both stores. While the second store still had surveillance footage from the night in question, the first store did not; by that time, it had already recorded over it. Detective viewed the video footage from the second store and was able to identify Powell and to partially track his movements through the store, but Detective "never found any footage of [Powell] exposing himself." Detective took two screenshots that demonstrated only that Powell had been present in the store.

¶5    Detective and another officer went to Powell's residence to talk to him. Powell allowed the officers into his residence and agreed to speak to them. He confirmed that he had been at both stores on the nights in question. When asked by Detective why he exposed himself, Powell explained that he had been paralyzed from the waist down following a car accident when he was twenty-seven, that before the accident he had been a "thrill seeker," and that, since that time, he would "go out into the community" two or three times a month and expose himself to "create excitement in his life" and "for the thrill of it." He also confirmed to Detective that when he exposed himself, he generally wore a "spandex or mesh material" over his genitals that someone "could see through."

¶6    In a later written statement, Powell largely confirmed his statements to Detective about exposing himself "just for the risk factor." As to the second incident, however, he provided an alternative explanation for the exposure, stating that he had a condom catheter attached to his leg that had become kinked and that he had tried to unkink it while in the store, but he did not believe that anyone observed him doing so. In his written statement, Powell also stated that he had been confronted before about exposing himself and felt bad about doing it.

¶7    Powell was charged with two counts of lewdness, with priors. At the one-day trial, Daughter, Stepmother, and Detective

testified for the State. At the close of the State's case, defense counsel moved for a directed verdict, which the trial court denied. The jury convicted Powell on both counts.

¶8     Powell appeals.


ISSUES AND STANDARDS OF REVIEW

¶9     Powell raises two main arguments on appeal. First, he argues that reversal of his convictions is appropriate because the trial court erred by denying his directed verdict motion. "We review a trial court's ruling on a motion for directed verdict for correctness." *State v. Gonzalez*, 2015 UT 10, ¶ 21, 345 P.3d 1168. With respect to the sufficiency of the evidence, we "review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict." *State v. Ashcraft*, 2015 UT 5, ¶ 18, 349 P.3d 664 (cleaned up). "We will uphold a trial court's denial of a motion for directed verdict based on a claim of insufficiency of the evidence if, when viewed in the light most favorable to the State, some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *Gonzalez*, 2015 UT 10, ¶ 27 (cleaned up).

¶10    Second, Powell asks that we reverse his convictions or, alternatively, remand for a new trial due to the ineffective assistance of his trial counsel. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Escobar-Florez*, 2019 UT App 135, ¶ 22, 450 P.3d 98 (cleaned up).

¶11    In connection with some of his claims of ineffective assistance of counsel, Powell seeks a remand for an evidentiary hearing under rule 23B of the Utah Rules of Appellate

Procedure. Rule 23B allows this court to remand a criminal case "to the trial court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel." Utah R. App. P. 23B(a). This court will grant a rule 23B motion to remand "only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *Id.*

ANALYSIS

I. Motion for a Directed Verdict

¶12    Powell contends that the trial court erred in denying his directed verdict motion. While Powell raises several arguments in an effort to demonstrate the court's error, at its core, his challenge is that his actions did not constitute exposure under the lewdness statute. In support, he points to his alternative catheter explanation and to evidence that, at one point, he tried to cover himself and that his genital area was covered by a mesh-like material. And, relying on caselaw that seemingly supports his characterization of the evidence, he contends that, while his conduct or clothing might have offended social mores, his actions did not rise to the level of lewdness as a matter of law.

¶13    Powell has not demonstrated that no reasonable jury could conclude that his conduct constituted lewdness under the statute. At the time of Powell's conduct, the lewdness statute provided,

> A person is guilty of lewdness if the person . . . performs any of the following acts in a public place or under circumstances which the person should know will likely cause affront or alarm to, on, or in the presence of another who is 14 years of age or older: (a) an act of sexual intercourse or sodomy;

    (b) exposes his or her genitals, . . . the buttocks, the
    anus, or the pubic area; (c) masturbates; or (d) any
    other act of lewdness.

Utah Code Ann. § 76-9-702(1) (LexisNexis 2012).

¶14     During trial, the State focused solely on the exposure variant of the lewdness statute; indeed, in closing argument, the prosecutor told the jury that "it's pretty clear today that we're just focusing on one of those acts, that [Powell] exposed his genitals," and that the State was not alleging "that he engaged in sexual intercourse, or that he masturbated, or that there was any other act of lewdness."

¶15     To that end, Daughter testified that in both incidents Powell wore jeans that appeared to have the crotch area "cut out"; that even though there was some kind of material covering that area, it was "[v]ery see-through"; and that she saw his penis through that material on both occasions. Stepmother echoed Daughter's testimony with respect to the first incident, explaining that there was only some see-through, "black mesh" covering Powell's genital area and that she could see his penis through it. As to the second incident, Stepmother testified that it was only after Powell noticed her trying to take his picture that he used a pair of pants hanging on a nearby rack to temporarily cover himself. And Detective testified that Powell himself admitted that he had been in both stores on the nights in question and that it was his common practice to go out into the community a few times a month and expose himself for the "thrill of it."

¶16     Powell has not demonstrated that appearing in a public place with only a see-through material covering his genitals does not constitute an act of exposure under our statute. While he suggests, for example, that his conduct was not lewd because there was testimony that he attempted to cover himself during one of the incidents and because his genital area was covered

with a mesh-like material, he does not engage with the most damning aspect of the witnesses' testimonies—that the witnesses could see, and actually did see, his penis. In this respect, he provides no authority for the proposition that covering his genital area with a see-through material prevented his conduct from crossing the line into criminal exposure as a matter of law.

¶17   Thus, without more, we discern no error by the trial court in submitting the case to the jury. Stepmother's and Daughter's testimonies, along with Detective's recounting of Powell's own admissions, provided ample evidence from which the jury could find that Powell had exposed his genitals in a public place on both occasions, as defined under our lewdness statute. *See State v. Gonzalez*, 2015 UT 10, ¶ 27, 345 P.3d 1168 (stating that we will uphold a jury's verdict on a sufficiency challenge if there is "some evidence . . . from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt" (cleaned up)).[3]

---

3. Powell makes other arguments about lewdness generally to suggest that his conduct was not lewd. For example, he contends that lewdness requires a lascivious, sexual component and that such a component was not present in his conduct. However, these arguments seem to apply to the catchall variant of lewdness, which, while included in the jury instructions on the elements of lewdness, was not the focus of the case. *See generally State v. Bagnes*, 2014 UT 4, ¶ 19, 322 P.3d 719 (addressing the limiting principle applicable to the catchall element of our lewdness statute). The State expressly told the jury in closing that it was "just focusing" on whether Powell had "exposed his genitals." But even if the catchall variant might have been implicated, Powell's other arguments do not undermine the sufficiency of the evidence supporting his two separate acts of exposure. We therefore reject them.

## II. Ineffective Assistance of Counsel

¶18    Powell argues that he received constitutionally ineffective assistance of counsel, claiming his trial counsel made two major errors. First, he argues that counsel was ineffective for not objecting to the lewdness elements jury instruction. Second, he argues that counsel was ineffective for not moving to dismiss the case on the basis of lost or destroyed evidence.

¶19    "The Sixth Amendment to the United States Constitution guarantees a criminal defendant the assistance of counsel for his defense, meaning that he has the right to effective assistance of counsel." *State v. Bond*, 2015 UT 88, ¶ 59, 361 P.3d 104 (cleaned up). To prevail on his ineffective assistance of counsel claims, Powell must demonstrate both that counsel's performance was deficient, in that it "fell below an objective standard of reasonable professional judgment," and that counsel's deficient performance prejudiced him. *See Archuleta v. Galetka*, 2011 UT 73, ¶ 38, 267 P.3d 232 (cleaned up). "Both elements must be present, and if either is lacking, the claim fails and the court need not address the other." *State v. Nelson*, 2015 UT 62, ¶ 12, 355 P.3d 1031.

¶20    To show deficient performance, given the "variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," Powell must overcome the "strong presumption" that, "under the circumstances, the challenged action might be considered sound trial strategy." *See Strickland v. Washington*, 466 U.S. 668, 689 (1984) (cleaned up); *see also State v. Scott*, 2020 UT 13, ¶ 35 (explaining that "the performance inquiry will often include an analysis of whether there could have been a sound strategic reason for counsel's actions," and that, "for instance, if the court concludes that the challenged action might be considered sound trial strategy, it follows that counsel did not perform deficiently" (cleaned up)). And "because the decision

not to pursue a futile motion is almost always a sound trial strategy, counsel's failure to make a motion that would be futile if raised does not constitute deficient performance." *State v. Torres*, 2018 UT App 113, ¶ 16, 427 P.3d 550 (cleaned up). That said, we are mindful that even if we "cannot conceive of a sound strategic reason for counsel's challenged conduct, it does not automatically follow that counsel was deficient." *Scott*, 2020 UT 13, ¶ 36. As our supreme court recently affirmed, "the ultimate question is always whether, considering all the circumstances, counsel's acts or omissions were objectively unreasonable." *Id.* (citing *Strickland*, 466 U.S. at 687).

¶21 To establish prejudice, Powell must show that "counsel's performance prejudiced him, meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bond*, 2015 UT 88, ¶ 59 (cleaned up). The prejudice requirement is a "relatively high hurdle to overcome," and "a mere potential effect on the outcome is not enough." *State v. Apodaca*, 2019 UT 54, ¶ 50, 448 P.3d 1255 (cleaned up). Rather, "the likelihood of a different result must be substantial." *Id.* (cleaned up).

¶22 We first address Powell's claims of error with respect to the jury instructions, and we then address his claim that counsel should have moved to dismiss the case on the basis of lost or destroyed evidence.

A.   Jury Instructions

¶23 Powell challenges trial counsel's failure to object to the elements instruction for lewdness on several grounds. Specifically, he argues that counsel should have objected to the elements instruction because it (1) improperly listed the "14 years of age or older" requirement as an alternative basis for conviction rather than as a required element, (2) omitted a prefatory attempt clause, and (3) improperly allowed conviction based on a reckless mental state. He also argues that (4) counsel

performed deficiently for not requesting an instruction on attempted lewdness as a lesser included offense of lewdness and that (5) counsel should have asked the court to instruct the jury that lewd acts are only those acts "marked by lasciviousness." (Cleaned up.)

¶24 "To evaluate whether trial counsel performed deficiently in failing to object to the jury instructions, we must first consider whether those instructions were legally correct." *State v. Liti*, 2015 UT App 186, ¶ 12, 355 P.3d 1078. If the instruction was correct, Powell cannot establish deficient performance for failing to object to it. *See State v. Lee*, 2014 UT App 4, ¶ 22, 318 P.3d 1164 ("Failure to object to jury instructions that correctly state the law is not deficient performance."); *see also State v. Maama*, 2015 UT App 235, ¶ 37, 359 P.3d 1272 (determining that where the challenged instruction was correct, an objection to the instruction would have been futile, and failing to raise a futile objection is not deficient performance).

¶25 For both lewdness charges, the jury was instructed that it had to find beyond a reasonable doubt for each element that Powell

> Intentionally, knowingly, or recklessly performed any of the following acts:
>
> a. An act of sexual intercourse or sodomy;
>
> b. Exposed his genitals, buttocks, anus, or his pubic area;
>
> c. Masturbated; or
>
> d. Any other act of lewdness[,]
>
> And did so

a. In a public place or

b. Under circumstances which the defendant should have known would likely cause affront or alarm to another 14 years of age or older.

¶26 We now address each ground raised by Powell and ultimately conclude that counsel did not perform deficiently.

### 1. Age Element

¶27 Powell first contends that counsel performed deficiently by not objecting to the lewdness elements instruction where it allowed the jury to convict him without finding that his conduct occurred in the "presence of another who is 14 years of age or older." He argues that, under the lewdness statute, the age requirement is a "mandatory element" and that the jury should have been required to find that his lewd acts were performed in the presence of someone who was at least fourteen years old.

¶28 The plain language of the statute does not support Powell's interpretation. We interpret statutes with the aim of giving "effect to the legislature's intent," and the "best evidence of the legislature's intent is the plain language of the statute itself." *State v. Ogden*, 2018 UT 8, ¶ 31, 416 P.3d 1132 (cleaned up); *see also State v. Harker*, 2010 UT 56, ¶ 12, 240 P.3d 780. "We presume that the legislature used each word advisedly," such that the "expression of one term should be interpreted as the exclusion of another." *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (cleaned up). "When we can ascertain the intent of the legislature from the statutory terms alone, no other interpretive tools are needed, and our task of statutory construction is typically at an end." *Id.* (cleaned up).

¶29 As referenced above, at the time of Powell's conduct, the lewdness statute required that a person perform one of the enumerated lewd acts "in a public place *or* under circumstances

which the person should know will likely cause affront or alarm to, on, or in the presence of another who is 14 years of age or older." Utah Code Ann. § 76-9-702(1) (LexisNexis 2012) (emphasis added). The plain language included the word "or" in describing the attendant circumstances under which the lewd act had to be performed. "Or" is a "function word to indicate an alternative." *Or*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/or [https://perma.cc/W6DH-55J2]; *see also State v. Canton*, 2013 UT 44, ¶ 13, 308 P.3d 517 ("In determining the ordinary meaning of nontechnical terms of a statute, our starting point is the dictionary." (cleaned up)). Thus, on its face, the lewdness statute permits conviction in the alternative, on either basis—when the lewd act is performed in a public place *or* in the presence of a person "14 years of age or older." Not only are we bound by this plain expression of intent, *see Aris Vision Inst. v. Wasatch Prop. Mgmt., Inc.*, 2006 UT 45, ¶ 17, 143 P.3d 278, but Powell cites no authority to otherwise suggest that, despite the use of the word "or" in the statute, it would be proper for this court to interpret the statute as though the legislature had used the word "and."

¶30   Thus, Powell has not demonstrated that the instruction was incorrect for failing to require the jury to find that he performed a lewd act in the presence of a person "14 years of age or older." Accordingly, we conclude that Powell has not shown that counsel performed deficiently by failing to object to the elements instruction on that basis. *See Lee*, 2014 UT App 4, ¶ 22.

2.     Attempt Clause

¶31   Powell next argues that counsel was ineffective for failing to require that the jury instructions include the clause "or an attempt to commit any of these offenses" as an element of the offense.

¶32   In the lewdness statute, the attempt clause is part of a prefatory phrase to setting out the required circumstances

surrounding, and the enumerated acts of, lewdness. The statute provides that a person is guilty of lewdness if, "under circumstances not amounting to rape, object rape, forcible sodomy, forcible sexual abuse, aggravated sexual assault, *or an attempt to commit any of these offenses*, [he or she] performs any of the following [enumerated] acts." Utah Code Ann. § 76-9-702(1) (emphasis added). Powell argues that the attempt clause should have been included in the jury instructions as an element because it effectively transforms lewdness into a specific intent crime.[4] In this respect, he argues, the clause's omission from the instructions allowed the jury to convict him on a lesser mental state than that required for specific intent crimes like attempt.

¶33   The plain language of the statute does not support Powell's suggested interpretation. The attempt clause in relation to the larger statute connects to circumstances "not amounting to" lewdness, rather than to circumstances amounting to lewdness. In other words, rather than setting out what lewdness is, the attempt clause is part of a larger description of what lewdness is not. *See State v. Rushton*, 2017 UT 21, ¶ 11, 395 P.3d 92 (stating that "we read the plain language of the statute as a whole," drawing meaning from the "context in which [the language at issue] is used" (cleaned up)); *State v. Rasabout*, 2015 UT 72, ¶ 10, 356 P.3d 1258 ("To ascertain that intent, we look first to the text of the statute within its context.").

¶34   And as the State notes, Utah courts have previously determined that "under circumstances not amounting to" clauses (when accompanied by an associated list of other crimes) do not constitute elements of the actual crime that follows. *See State v. Reed*, 2000 UT 68, ¶¶ 32–33, 8 P.3d 1025 (rejecting the

---

4. Attempt crimes are specific intent crimes. *See State v. Jones*, 2002 UT 01, ¶ 9, 44 P.3d 658 ("[T]he offense of attempt requires an intent to commit a specific offense.").

argument that "not amounting to" language in the aggravated sexual abuse of a child statute "obligated the State to establish a primary offense that did not amount to sodomy, or attempted sodomy [as an element of the offense], in order to convict him of aggravated sexual abuse," and stating that "'the only rule that is realistic and makes sense is that the State need prove only that which it has charged and should be able to ignore proof as to lack of any greater offense to which the accused just may be required to respond'" (quoting *State v. Peters*, 550 P.2d 199, 199–200 (Utah 1976))); *State v. Ansari*, 2004 UT App 326, ¶¶ 7–13, 100 P.3d 231 (explaining that the "'not amounting to' clause" has been "consistently interpreted . . . to not require the State to affirmatively disprove other crimes"); *see also State v. Young*, 2015 UT App 286, ¶¶ 9–10, 364 P.3d 55 (analyzing "by any means *other* than" language in a statute, and stating that "Utah cases have interpreted similar provisions of other criminal statutes and held that those provisions do not require the State to disprove the defendant's commission of the act or acts the statutory language excludes" (cleaned up)).

¶35　Powell does not acknowledge this precedent and has not otherwise demonstrated that the elements instruction was incorrect because it failed to include the attempt clause. He therefore has not shown that it was objectively unreasonable under the circumstances for counsel to have declined to request the attempt clause's inclusion. *See Scott*, 2020 UT 13, ¶ 36. Thus, Powell has not shown that counsel performed deficiently on this basis. *See Lee*, 2014 UT App 4, ¶ 22.

3.　Reckless Mental State

¶36　Powell next challenges the mental states provided in the jury instructions. The elements instruction provided that the jury could find Powell guilty of lewdness if it found that he "[i]ntentionally, knowingly, or recklessly performed any of the" enumerated acts of lewdness. Relying heavily on the lewdness

involving a child statute, which requires that the person commit the enumerated acts of lewdness "intentionally or knowingly," *see* Utah Code Ann. § 76-9-702.5(1) (LexisNexis 2012), Powell argues that "the 'intentionally or knowingly' mental states" from that statute apply to the more general lewdness statute. And because counsel did not request that "recklessly" be omitted from the elements instruction, counsel performed deficiently.

¶37     Again, the plain language of the statute does not support Powell's interpretation. While we appreciate Powell's attempt to analogize to the lewdness involving a child statute, we cannot read into the lewdness statute language that it does not contain. *See State v. Robertson*, 2017 UT 27, ¶ 40, 438 P.3d 491 (stating that the judiciary interprets and applies legislation "according to what appears to be the legislature's intent, neither inferring substantive terms into the text that are not already there nor taking away from the statutory text by ignoring it or rendering it superfluous" (cleaned up)); *Associated Gen. Contractors v. Board of Oil, Gas & Mining*, 2001 UT 112, ¶ 30, 38 P.3d 291 ("We will not infer substantive terms into the text that are not already there. Rather, the interpretation must be based on the language used, and we have no power to rewrite the statute to conform to an intention not expressed." (cleaned up)).

¶38     The lewdness statute, as opposed to the lewdness involving a child statute, does not provide the applicable mental states associated with performing the enumerated lewd acts. Utah Code Ann. § 76-9-702(1). And we must presume that the omission in the lewdness statute was intentional. *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 ("We presume that the expression of one term should be interpreted as the exclusion of another. We therefore seek to give effect to omissions in statutory language by presuming all omissions to be purposeful." (cleaned up)). Our legislature has expressly provided for the contingency of "when the definition of the offense does not specify a culpable mental state and the

offense does not involve strict liability." Utah Code Ann. § 76-2-102 (LexisNexis 2012). For such offenses, section 76-2-102 provides that "intent, knowledge, or recklessness shall suffice to establish criminal responsibility." *Id.* In allowing the jury to find guilt based upon a determination that Powell performed the lewd act intentionally, knowingly, or recklessly, the lewdness elements instruction therefore comported with this statute and, by extension, the plain language applicable to the lewdness statute.

¶39 Powell has not demonstrated that the elements instruction was erroneous for including "recklessly" as a mental state. *See Lee*, 2014 UT App 4, ¶ 22. Accordingly, Powell has not shown that it was unreasonable for counsel not to object to the inclusion of "recklessly" in the elements instruction. *See Scott*, 2020 UT 13, ¶ 36.

4.     Lesser Included Offense

¶40 Powell argues that his counsel performed deficiently by not requesting that the jury be instructed on a lesser included offense of attempted lewdness. Powell contends that there was a rational basis in the evidence for acquitting him of the lewdness charges while convicting him of attempted lewdness.

¶41 Our legislature has generally provided that an offense is lesser included when, among other things, "[i]t constitutes an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged or an offense otherwise included therein." Utah Code Ann. § 76-1-402(3)(b) (LexisNexis 2012). "A defendant is entitled to a jury instruction on a lesser included offense, so long as the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *State v. Hull*, 2017 UT App 233, ¶ 15, 414 P.3d 526 (cleaned up).

¶42 But when an appellant challenges trial counsel's failure to request a lesser included offense instruction as constitutionally ineffective, the appellant runs headlong into the "strong presumption" that, under the circumstances, the failure to request the lesser included offense instruction "might be considered sound trial strategy." *See Strickland*, 466 U.S. at 689 (cleaned up). As we have explained, "even when there is a basis for a lesser-included-offense instruction, counsel can reasonably decide not to request one." *Hull*, 2017 UT App 233, ¶ 16. "Depending on the facts of a particular case, counsel may have perfectly valid tactical reasons to forgo the instruction and to instead present an 'all or nothing' defense that entails avoiding a lesser-included-offense instruction in the hopes the jury will find the defendant 'totally innocent of *any* wrongdoing.'" *Id.* (cleaned up); *see also State v. Binkerd*, 2013 UT App 216, ¶ 31, 310 P.3d 755 (explaining that counsel's decision not to request a lesser included offense instruction is entitled to considerable deference "in recognition of the fact that counsel is in the best position to gauge the defendant's likelihood of defeating a charge outright and to weigh the possibility that acquittal is not in the cards but that a jury might be satisfied with a conviction on a lesser charge").

¶43 For example, counsel could reasonably pursue an "all or nothing defense" when, in light of the weaknesses in the State's evidence of the case, it would be reasonable for counsel to conclude that submitting a lesser included offense instruction would obviate a defendant's reasonable chances of a full acquittal. *Hull*, 2017 UT App 233, ¶¶ 16–21. Likewise, counsel does not perform deficiently by failing to request a lesser included offense instruction that is inconsistent with the defense presented at trial. *See State v. Hall*, 946 P.2d 712, 723–24 (Utah Ct. App. 1997) (concluding that counsel did not perform deficiently by failing to request a lesser included offense instruction that "would have been inconsistent" with the defense theory argued at trial); *accord State v. Perry*, 899 P.2d 1232, 1241 (Utah Ct. App.

1995); *see also State v. Campos*, 2013 UT App 213, ¶ 34, 309 P.3d 1160 ("Any election between inconsistent defenses is a legitimate exercise of trial strategy rather than ineffective assistance of counsel." (cleaned up)).

¶44 Here, even assuming Powell is correct that the requirements for requesting a lesser included offense instruction were met, he has not shown that counsel was deficient by not requesting one. Counsel's theory at trial was that Daughter and Stepmother did not see what they thought they saw—essentially an argument that Powell did not expose himself and that the witnesses' testimonies to the contrary were unreliable. To that end, counsel emphasized that both stores would have been busy on both nights and that, apart from Daughter's and Stepmother's testimonies, there was no corroborating evidence of actual exposure. Trial counsel also pointed both to Detective's testimony that the video surveillance footage he viewed did not show Powell exposing himself and to the lack of evidence about involvement of either store's management. And counsel asserted that, while Powell might have admitted to Detective to generally exposing himself on other occasions, he did not admit to doing so on either specific occasion.

¶45 Given the defense's theory, counsel could have reasonably concluded that requesting a lesser included offense instruction for attempted lewdness would have undermined its theory that the jury should not credit Daughter's and Stepmother's testimonies at all and that no exposure, attempted or otherwise, had occurred. In these circumstances, not requesting a lesser included offense instruction of attempted lewdness was an objectively reasonable decision entitled to our deference, *see Binkerd*, 2013 UT App 216, ¶ 31, and Powell has not otherwise demonstrated that counsel acted unreasonably in light of the theory presented at trial and the evidence counsel believed supported it, *see Hull*, 2017 UT App 233, ¶ 17; *see also Scott*, 2020 UT 13, ¶ 36. Accordingly, Powell has not shown that

counsel performed deficiently by not requesting the lesser included offense instruction.

5.      Lasciviousness as Lewdness

¶46    Powell's final ineffective assistance claim relating to the jury instructions is that counsel performed deficiently by not requesting an instruction, based on a discussion in *State v. Bagnes*, 2014 UT 4, 322 P.3d 719, defining lewdness as conduct "marked by lasciviousness." (Cleaned up.)

¶47    To carry his burden of persuasion on appeal, Powell must "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8). When the claim of error is that counsel was ineffective for failing to request that a jury instruction be given (or failing to argue that the instructions given did not accurately or completely instruct the jury on the law), the appellant must, at the very least, "explain what parts of the [challenged] instruction were inadequate or what the instruction should have said." *Taylor v. State*, 2007 UT 12, ¶¶ 66–67, 156 P.3d 739; *see also State v. Baer*, 2019 UT App 15, ¶¶ 18–20, 438 P.3d 979 (determining that appellant failed to demonstrate that counsel performed deficiently for assenting to certain jury instructions where he did not explain the error in the instructions). Powell has not met that burden here.

¶48    While Powell contends that counsel should have requested an instruction of lewdness as defined in *Bagnes*, he does not engage with the instructions that were given and explain how they were insufficient. For example, the court did instruct the jury that "'[a]ny other act of lewdness'" includes "acts of the same general kind, class, character, or nature as the enumerated conduct of public intercourse, sodomy, exposure of the genitals or buttocks, or masturbation." *See Bagnes*, 2014 UT 4, ¶ 19. Powell does not acknowledge this instruction or explain why it did not sufficiently alert the jury to the type of conduct

meant to be proscribed under the lewdness statute. Likewise, Powell fails to describe what additional instruction he claims counsel should have requested. Thus, Powell's claim is unavailing.[5]

¶49 In sum, while Powell has raised several grounds for challenging counsel's performance with respect to the jury instructions, we conclude Powell has not demonstrated that counsel performed deficiently in relation to them.

B.    Lost or Destroyed Evidence

¶50 Powell argues that counsel performed deficiently by not moving to dismiss the case due to the lost or destroyed video surveillance from both stores, which he argues violated his right to due process under the Utah Constitution. As already discussed, to succeed on an ineffective assistance of counsel claim, Powell must demonstrate that it was objectively unreasonable under the circumstances for counsel to have declined to move for dismissal on the basis of the loss of the video surveillance footage. *See Scott*, 2020 UT 13, ¶ 36. Powell has not met this burden.

¶51 In *State v. Tiedemann*, 2007 UT 49, 162 P.3d 1106, our supreme court set out a two-part analysis for addressing due process claims under the Utah Constitution based on claims that the State lost or destroyed exculpatory evidence. *Id.* ¶ 44; *accord*

---

5. Even had Powell demonstrated deficient performance, we question whether he was harmed by this alleged error. The *Bagnes* court interpreted and applied the catchall variant, "any other act of lewdness." *See Bagnes*, 2014 UT 4, ¶¶ 11–23. But as already discussed, Powell's case centered instead on the exposure variant, which *Bagnes* did not interpret or apply. It is therefore difficult to credit Powell's assertion that the lack of a *Bagnes*-like instruction harmed him.

*State v. Mohamud*, 2017 UT 23, ¶ 18, 395 P.3d 133; *State v. DeJesus*, 2017 UT 22, ¶ 27, 395 P.3d 111. In making this argument, Powell focuses on the stores' culpability in not retaining the surveillance video and the police's purported obligation to immediately make some attempt to preserve potential evidence upon receipt of a report. But as stated in *Tiedemann*, "criminal defendants are entitled to information *possessed by the State* to aid in their defense." 2007 UT 49, ¶ 40 (emphasis added). Powell has not shown that the State's duty to preserve or maintain the video surveillance was triggered. He also has not shown that the State actually lost or destroyed the video footage or that, even if it had, dismissal would have been the appropriate remedy.

¶52    As Powell concedes, any video surveillance of either event was recorded by the stores' surveillance systems and maintained by the stores, not the State. He also concedes that the first store, and not the State, destroyed any surveillance footage it might have had by recording over it.

¶53    As to the second store, Powell directs us to no place in the record suggesting the video surveillance was lost or destroyed. Indeed, Detective was able to view the surveillance many months after the incidents occurred. And even assuming the second store recorded over it subsequent to Detective's viewing, Powell points to no evidence suggesting that the State ever received an actual copy of the footage from the second store; from our review, it appears that, at most, there was evidence that Detective collected two screenshots from the second store's video, but there was no evidence presented at trial that Detective also collected a copy of the video itself.

¶54    In this respect, Powell has not shown that the *Tiedemann* test applies in situations where a private party, not the State, controls the maintenance and preservation of the potential evidence. Indeed, Powell relies heavily on *DeJesus* to make his argument, but the video surveillance in that case was recorded,

possessed, and then lost by the Utah State Prison—a State actor. *See* 2017 UT 22, ¶¶ 3–6, 38–54.

¶55 And to the extent Powell faults the police for not taking immediate efforts to collect the video surveillance, he has not directed us to any authority suggesting that *Tiedemann* and its progeny may be read to impose on police an obligation to "immediately" make an "initial quick" investigation upon receiving any report of crime, with the aim of preserving any potential evidence before any legal theories have been identified.

¶56 Finally, even assuming that a due process violation had occurred, Powell also has not demonstrated that the remedy he claims counsel should have sought—dismissal—would have been warranted. If a court determines that the defendant's due process rights have been violated, the court must then decide the proper remedy for the violation, which may include, but is not limited to, dismissal of the case. *See Tiedemann*, 2007 UT 49, ¶ 45 (speaking in terms of sanctioning the State if the balancing of the factors suggests it is appropriate to do so to "preserve[] defendants' constitutional rights"); *see also DeJesus*, 2017 UT 22, ¶ 46 n.67 (explaining that "nowhere [in *Tiedemann*] is dismissal mandated as the sole remedy" and that "because the touchstone for the balancing process is fundamental fairness, courts may find that other, less drastic remedies may adequately protect the due process rights of criminal defendants" (cleaned up)).

¶57 Thus, we conclude that Powell has not demonstrated that his trial counsel performed deficiently by not moving for dismissal due to the unavailable video surveillance.

### III. Motion for Rule 23B Remand

¶58 Finally, Powell requests that, pursuant to rule 23B of the Utah Rules of Appellate Procedure, we remand this case to the trial court for "entry of findings of fact" he claims are necessary for this court's determination of two additional claims for

ineffective assistance of counsel: the failure of counsel to adequately advise him regarding his right to testify, and counsel's failure to move for suppression of the statements Powell made to Detective. We deny Powell's motion.

¶59   Upon motion from a party to an appeal in a criminal case, rule 23B confers on an appellate court the authority to remand a case to the trial court for "entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel." Utah R. App. P. 23B(a). "The motion will be available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *Id.*; *see also State v. Griffin*, 2015 UT 18, ¶ 20, 441 P.3d 1166 ("It stands to reason that if the defendant could not meet the test for ineffective assistance of counsel, even if his new factual allegations were true, there is no reason to remand the case, and we should deny the motion."). Additionally, "rule 23B motions must be accompanied by affidavits that show the claimed deficient performance of the attorney and that show the claimed prejudice suffered by the appellant as a result of the claimed deficient performance." *State v. Biebinger*, 2018 UT App 123, ¶ 14, 428 P.3d 36 (cleaned up); *see also* Utah R. App. P. 23B(b).

A.   Right to Testify

¶60   Powell has not demonstrated facts that, even if proved, could support a claim of ineffective assistance of counsel for failure to adequately advise him with respect to his right to testify at trial. Powell argues that counsel failed to advise him that he had the option of testifying at trial without waiving his Fifth Amendment right against self-incrimination. Powell points to *State v. Mohamud*, 2017 UT 23, 395 P.3d 133, as authority supporting both the proposition that he could have testified before the jury without surrendering his Fifth Amendment privileges and that his counsel performed deficiently by not

advising him of the same. To support this argument factually, he avers that his counsel "had not distinguished the parameters of [his] right to testify in the same way as announced" in *Mohamud* and that had counsel so advised him, he "would not have passed on the need to testify in [his] own behalf" during the defense's presentation of its case. In this respect, Powell avers that he "wanted to explain at trial what discrepancies the video footage would have shown," particularly in attempting to "rebut[] the allegations from the State witnesses," and that it was his counsel's "incomplete or incorrect advice" about his right to testify that "led [him] to surrender" that right "when [he] did not want to do so." He also sets forth certain facts he would have testified to about his experiences in both stores.

¶61 Powell's reliance on *Mohamud* to demonstrate ineffective assistance on this issue is misguided. In *Mohamud*, our supreme court recognized that criminal defendants seeking to establish a due process violation based on the State's loss or destruction of exculpatory video evidence often face a difficult task in attempting to describe "why the video would have been relevant to [the] defense." *Id.* ¶¶ 22–23. The court therefore noted that to meet the threshold requirement of showing a reasonable probability that the evidence would have been exculpatory, the defendant "could have testified on his own behalf as to what the video would have shown, which would not have waived his Fifth Amendment right against self-incrimination." *Id.* ¶ 23.

¶62 Significantly, however, the court explained that this right to testify without waiving Fifth Amendment privileges applied to resolve the tension between "a defendant's desire to testify *in a hearing that adjudicates a claim of constitutional right in a criminal case* and the right of that defendant not to give testimony that is incriminating as to the charge in question." *Id.* (emphasis added) (cleaned up). There is simply no suggestion in *Mohamud* that a defendant may testify *in front of the jury during trial* to establish

his view of the lost evidence without waiving his right against self-incrimination.[6]

¶63   Accordingly, because the premise underlying Powell's request for remand on this point is flawed, Powell cannot demonstrate the existence of facts that "could support a determination that counsel's performance was deficient." *Biebinger*, 2018 UT App 123, ¶ 14 (cleaned up). Certainly, Powell has not shown that it was objectively unreasonable for counsel to have advised him not to testify during the defense's presentation of its case if his desire was to preserve his Fifth Amendment right against self-incrimination. Powell therefore has not established that remand under rule 23B for the entry of findings of fact on this point is warranted.[7] *Griffin*, 2015 UT 18, ¶ 20.

B.   Suppression Motion

¶64   Powell has also not shown that remand is appropriate for entry of findings to support his claim that counsel was ineffective for failing to move to suppress his statements to

---

6. Even on its own facts, *State v. Mohamud* is inapposite. *Mohamud* involved a pretrial hearing on a motion to dismiss, not a jury trial. 2017 UT 23, ¶¶ 5–6, 395 P.3d 133.

7. In connection with this challenge, Powell claims that counsel failed to impeach the witnesses with respect to certain facts in their testimonies. However, he does not explain how these facts connect with counsel's failure to properly advise him on his right to testify. Instead, he merely offers his interpretation of the facts and requests that we remand for those facts to be entered. To the extent Powell meant to raise this as an additional ground for remand under rule 23B, he has not adequately briefed it, and we decline to address it further. *See State v. MacNeill*, 2017 UT App 48, ¶ 83, 397 P.3d 626.

Detective. Powell argues that Detective and another officer questioned him at his home without giving required *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (holding that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination"); *see also State v. Perea*, 2013 UT 68, ¶ 91, 322 P.3d 624 ("The U.S. Supreme Court's landmark decision in *Miranda v. Arizona* prevents the use of incriminating statements stemming from custodial interrogation of a defendant unless certain procedural safeguards are met." (cleaned up)). Because this is so, he claims that counsel should have moved to suppress his statements to Detective and the other officer.

¶65    *Miranda* applies when a person is subject to custodial interrogation, and "require[s] that certain warnings be given prior to custodial interrogation if the resulting evidence is to be used against the accused." *State v. Reigelsperger*, 2017 UT App 101, ¶ 41, 400 P.3d 1127 (cleaned up); *see also State v. Fullerton*, 2018 UT 49, ¶ 19, 428 P.3d 1052 (explaining that the "*Miranda* safeguards apply when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning" (cleaned up)). Thus, "a threshold inquiry in any *Miranda* challenge is whether the defendant was in custody at the time of questioning." *State v. Fredrick*, 2019 UT App 152, ¶ 29, 450 P.3d 1154.

¶66    To determine custody, a two-step approach is employed. First, it must be ascertained "whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Reigelsperger*, 2017 UT App 101, ¶ 45 (cleaned up). Second, "if the court concludes that the person's freedom of movement was sufficiently curtailed, the court then asks whether the relevant environment presented the same

inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* (cleaned up); *accord Fullerton*, 2018 UT 49, ¶ 21.

¶67 Powell does not adequately address the issue of whether, at the time that Detective questioned him with another officer at his home, he was actually in custody. The sum total of his argument that he was in custody is that the police had focused on and targeted him as a suspect for both exposure episodes. He does not engage with the two-part custody test described above or the facts potentially present in his case regarding whether his freedom was curtailed and, if it was, whether the questioning in his home presented the same coercive pressures as station house questioning would have.

¶68 Instead, Powell essentially asks that we presume custody because he was the focus of an investigation. We decline to do so. *See Stansbury v. California*, 511 U.S. 318, 324–25 (1994) (per curiam) ("Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest."); *Fullerton*, 2018 UT 49, ¶¶ 34–36 (concluding that, even though the officers' questioning turned accusatory and focused on the suspect, the circumstances did not rise to the level of custody).

¶69 Because Powell has not adequately briefed the issue of whether his *Miranda* rights were even triggered, he has not provided a basis from which we can conclude that counsel provided ineffective assistance in failing to move for suppression of his statements to Detective. *State v. Ferry*, 2007 UT App 128, ¶ 12, 163 P.3d 647. And because he has not carried his burden on this point, we therefore must deny his request for remand. *Griffin*, 2015 UT 18, ¶ 20.

CONCLUSION

¶70     We affirm. Powell has not shown that the trial court erred by sending the case to the jury. Additionally, Powell has not demonstrated that his trial counsel was constitutionally ineffective with respect to the jury instructions or for failing to request dismissal on the basis of lost or destroyed exculpatory evidence. Finally, Powell has not established that remand under rule 23B of the Utah Rules of Appellate Procedure is appropriate.

————