2025 UT App 93

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MARCO ANTONIO CORONA,
Appellant.

Opinion
No. 20221117-CA
Filed June 26, 2025

Fourth District Court, Provo Department
The Honorable Kraig Powell
No. 211400191

Freyja Johnson, Rachel Phillips Ainscough, and
Anna Grigsby, Attorneys for Appellant

Derek E. Brown and Emily Sopp,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and AMY J. OLIVER concurred.

MORTENSEN, Judge:

¶1 Finding that he sexually abused the eleven-year-old daughter of his cousin's girlfriend, a jury convicted Marco Antonio Corona of two counts of aggravated sexual abuse of a child. The abuse occurred after a party where many of the adults, including Corona, were drinking. Corona appeals his convictions, raising two claims of ineffective assistance of counsel. Corona first alleges that his counsel was ineffective for failing to move for a directed verdict or to arrest judgment, asserting insufficient evidence on a theory of inherent improbability. He next claims ineffective assistance for his counsel's failure to object to certain statements by the child's mother, which Corona claims were

unfairly prejudicial. We reject these claims and affirm Corona's convictions.

BACKGROUND[1]

¶2     One summer evening, Corona, his girlfriend, and their children attended a party. The gathering was hosted at the home of Corona's cousin (Cousin), who lived with his girlfriend (Mother) and her older children, including eleven-year-old Rita.[2] Corona and many of the other adults in attendance that evening were drinking. The drinking eventually led to an argument between Mother and Cousin. Cousin left with one of his children. Later, Rita and Mother also got into an argument.

¶3     At some point that evening, Rita ended up in her room crying. Corona went into Rita's room. Corona's daughter (Daughter), who was near Rita's age, was in the room initially, but Corona made her leave. Corona then asked Rita if she knew how girls got pregnant. Corona then got on the bed with Rita and lay next to or on top of her such that she "couldn't push him off." Corona "put his hand on [Rita's] breast," grabbing it and "squishing it," causing Rita to cry in pain. Corona then put his hand underneath Rita's pants on her pubic area. Rita said that she could tell "he was going to put it lower" but that, when he tried to do so, she yelled for Daughter. Corona responded by quickly removing his hand from her pants, and she escaped from him and fled the room.

---

1. "On appeal from a jury verdict, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly, presenting conflicting evidence only as necessary to understand issues raised on appeal." *State v. Rogers*, 2020 UT App 78, n.2, 467 P.3d 880 (cleaned up).

2. A pseudonym.

¶4    At some point after Rita escaped from her room, her aunt (Aunt) arrived to pick her up from the house. Rita went outside to meet Aunt, and Corona was running after her, "grabbing her," and "trying to hold her back." Rita was crying, and Aunt attempted to "separate them." Rita and Aunt went inside to pack her things, but Corona followed them and continued to call after Rita, telling her to stay there.

¶5    Aunt drove Rita back to her home. All the while, Rita "was crying." Aunt asked Rita if "she was okay" and "if anything had happened to her," but Rita "denied everything" until they were nearing Aunt's home. At that point, Rita "started crying again" and "asked [Aunt] where babies came from." This caused Aunt some concern, so she continued asking Rita what had happened, but Rita did not disclose anything at that point; Aunt told her to "try to get some sleep." Eventually, Rita told Aunt and Mother about the incident. Mother reported the incident to the police.

¶6    Rita was taken to a Children's Justice Center (CJC), where she was interviewed about the incident. During that interview, Rita explained the story summarized above, but she also stated that Corona "ended up slapping" her. She further stated that she regarded Corona as her "uncle . . . because he's like family."

¶7    Corona was arrested and charged with two counts of aggravated sexual abuse of a child. At trial, the State presented the evidence summarized above. The State called several witnesses, including Aunt, Mother, Corona's girlfriend, Daughter, and Rita. Corona testified in his defense, along with his brother, who had been present at the party.

¶8    Rita testified that she had lied during her CJC interview about Corona slapping her. She explained that she said this only because she "felt rushed" and like she "needed to give a specific answer." Her entire CJC interview was then played for the jury. On cross-examination, Corona's defense counsel (Counsel) highlighted some confusing statements and inconsistencies

contained in Rita's testimony and her CJC interview, including whether Corona pushed Daughter out of the room or just told her to leave; where Corona was and how he was positioned during the abuse; and what happened after the alleged abuse, whether Daughter came running into the room when Rita called for her or whether Rita fled out of the room.

¶9 Mother testified that she was "[u]pset and angry" when she found out what Corona did to Rita. She was upset that she "wasn't there for [Rita] to protect her." She explained, "[W]e considered [Corona] like part of the family, and then, you know, to find out that he would do such a thing like that, knowing that he also has a daughter kind of around the same age."

¶10 The jury convicted Corona as charged.

ISSUE AND STANDARD OF REVIEW

¶11 Corona appeals, raising two claims of ineffective assistance of counsel. "A claim of ineffective assistance of counsel raised for the first time on appeal presents a question of law." *State v. Higley*, 2020 UT App 45, ¶ 12, 463 P.3d 77.

ANALYSIS

¶12 Corona claims Counsel provided ineffective assistance in two ways: first, by failing to move for a directed verdict or to arrest judgment, asserting insufficient evidence based on a theory of inherent improbability regarding Rita's testimony; and second, by failing to object to Mother's statements. To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Both elements must be present" to demonstrate ineffective assistance, and "if either is

lacking, the claim fails and the court need not address the other." *State v. Powell*, 2020 UT App 63, ¶ 19, 463 P.3d 705 (cleaned up).

¶13 Here, Corona's inherent improbability claim fails because he cannot demonstrate that Counsel rendered deficient performance, and his improper testimony claim fails because he cannot demonstrate he was prejudiced by Mother's statements.

## I. Inherent Improbability

¶14 Corona first argues that Counsel was ineffective for "failing to move for a directed verdict or to arrest judgment based on Rita's inherently improbable statements." To prove deficient performance, Corona must demonstrate Counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The deficient performance inquiry "should focus on whether counsel's assistance was reasonable considering all the circumstances." *State v. Gallegos*, 2020 UT 19, ¶ 34, 463 P.3d 641 (cleaned up).

¶15 To succeed on the deficient performance prong, Corona would have to show that it was objectively unreasonable not to make the motion. *See State v. Scott*, 2020 UT 13, ¶ 35, 462 P.3d 350. Because we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," this is a difficult standard to meet. *Gallegos*, 2020 UT 19, ¶ 34 (cleaned up). And it is only made more difficult in the context of inherent improbability.

¶16 Any reasonable attorney who has been tracking the development of Utah's case law surrounding the doctrine of inherent improbability would know that it is a very high standard to meet. The foundational case addressing the standard for inherent improbability in Utah law is *State v. Robbins*, 2009 UT 23, 210 P.3d 288. "The witness in *Robbins* was a minor whose testimony contained many inconsistencies as well as patently false statements to cover up those inconsistencies—including a

made up story about a hearing problem—and no other evidence pointed to the defendant's guilt." *State v. Hughes*, 2024 UT App 168, ¶ 37, 560 P.3d 188 (cleaned up), *cert. denied*, 564 P.3d 957 (Utah 2025).

¶17 Not only did *Robbins* involve an extreme set of circumstances, but it is also the "only Utah case in which a witness's testimony has been deemed inherently improbable based on material inconsistencies." *Id.* As we have pointed out, "a case which actually falls within the *Robbins–Prater* rubric is exceedingly rare."[3] *State v. Rivera*, 2019 UT App 188, ¶ 23 n.6, 455 P.3d 112. In 2019, we noted that "we have not found a single Utah decision examined under that rubric that has reversed a verdict since *Robbins*." *Id.* That is still true six years later.

¶18 Reasonable counsel could have—indeed probably *would have*—concluded that there was no use in making a motion based on inherent improbability in the present matter because such a motion would almost certainly fail. While this court may be confronted with another factual case like *Robbins* someday, this case doesn't come close. A reasonable attorney would be wary of making a motion based on inherent improbability in all but the most extreme case.[4]

---

3. *State v. Prater*, 2017 UT 13, 392 P.3d 398 came nine years after *State v. Robbins*, 2009 UT 23, 210 P.3d 288, and clarified that in *Robbins*, it "was the inconsistencies in the child's testimony *plus* the patently false statements the child made *plus* the lack of any corroboration that allowed this court to conclude that insufficient evidence supported Robbins's conviction." *Id.* ¶ 38.

4. Traditionally, where a defendant claims that there was insufficient evidence to support a conviction due to the inherent improbability of specific evidence, "our analysis has two parts."

(continued…)

¶19 "There are three hallmarks of inherently improbable testimony that courts have often considered in their analysis: material inconsistencies, patent falsehoods, and lack of corroborating evidence." *State v. Barnes*, 2023 UT App 148, ¶ 24, 542 P.3d 108 (cleaned up), *cert. denied*, 544 P.3d 459 (Utah 2024). Corona argues that Rita's testimony demonstrated all three of these hallmarks. We find his arguments on each point unpersuasive.

¶20 First, Corona argues that Rita's testimony contained material inconsistencies because there were some inconsistencies between her trial testimony and her CJC interview. Specifically, Corona points to inconsistencies about whether Corona pushed Daughter out of the room or just told her to leave; where Corona was and how he was positioned during the abuse; what happened after the alleged abuse, namely, whether Rita called for Daughter and Daughter came running into the room or whether Rita fled out of the room; and whether Rita called Aunt after the abuse or whether Aunt was already there when Rita escaped.

¶21 Here, it does appear that Rita's testimony may have contained some inconsistencies. For example, the exact timeline of when the abuse occurred, what Rita did directly after it occurred, and when Aunt arrived is unclear. But while Rita's testimony may have contained some inconsistencies, we have pointed out that

---

*State v. Barnes*, 2023 UT App 148, ¶ 19, 542 P.3d 108, *cert. denied*, 544 P.3d 459 (Utah 2024). "First, we must analyze the evidence that [the defendant] claims is inherently improbable and determine whether the challenged piece of evidence is of such a poor quality that it should be disregarded. If we determine that the challenged testimony is inherently improbable, we then determine if sufficient evidence remains under which a reasonable jury could have convicted." *Id.* (cleaned up). Here, we determine that Rita's testimony was not inherently improbable, and therefore, we do not proceed to the second step.

"this is true with regard to many complaining witnesses; indeed, it would be a rare case in which defense counsel could identify no inconsistencies in the account given by the State's main witness." *Id.* ¶ 27.

¶22 "The inherent improbability standard generally is not satisfied by the mere existence of a conflict in the evidence." *Hughes*, 2024 UT App 168, ¶ 33 (cleaned up); *see also id.* ¶ 40 ("Merely identifying a conflict in the evidence is wholly insufficient to establish that the evidence with which one disagrees is inherently improbable."). Rather, the inconsistencies in the evidence must, at the very least, be substantial for a witness's testimony to be considered inherently improbable. *See Robbins*, 2009 UT 23, ¶ 17. Here, the inconsistencies in Rita's testimony were not material because they involved either "tangential issues that had only indirect relevance to the issue at hand" or "a matter of perception about which a person could potentially simply be mistaken." *State v. Broadwater*, 2024 UT App 184, ¶ 44, 562 P.3d 739, *cert. denied*, 564 P.3d 959 (Utah 2025).

¶23 Second, Corona argues that Rita's testimony contained patent falsehoods. In her CJC interview, Rita said that Corona slapped her during the abuse. But at trial, Rita explained that this was a lie. In explaining why she lied, Rita said that she felt "rushed" and like she "needed to give a specific answer." Corona argues that Rita's explanation of her lie contained patent falsehoods because "the record demonstrates that Rita was *not* rushed or pressured to make any statement about [Corona] slapping her in the CJC interview."

¶24 This argument is unavailing. Rita did not say that she *was* rushed and pressured to give a certain answer, but only that she *felt* that way. It is certainly within the realm of possible human experience for a person—particularly a child—to have a feeling that is inconsistent with reality and to act based on that feeling. It would be an extremely unlikely scenario in which an attorney

could prove that a witness offered patent falsehoods as to their own feelings. Even if what Corona took issue with was the admittedly false statement about the slap itself, that one falsehood standing alone would not require the district court to ignore the remainder of Rita's testimony, particularly when Rita acknowledged that the statement was false and explained why she made it. *See State v. LeVasseur*, 2020 UT App 118, ¶ 28, 473 P.3d 204 (stating that, where a witness testified to lying to police at her friend's request, "the inconsistencies identified [were] not of a kind to render [the witness's] testimony inherently improbable").

¶25 Lastly, Corona argues that there was a lack of evidence to corroborate Rita's allegations of abuse because there was "no physical evidence or eyewitness testimony confirming Rita's allegations." But "corroborating evidence sufficient to defeat [an inherent improbability] claim does not have to corroborate the witness's account across the board, in every particular. It just has to provide a second source of evidence for at least some of the details of the witness's story." *State v. Skinner*, 2020 UT App 3, ¶ 34, 457 P.3d 421 (cleaned up). Here, there were certainly additional sources that corroborated some of the details of Rita's story.

¶26 First, multiple witnesses corroborated Rita's testimony that Corona was drinking that night. Second, Aunt corroborated that Rita was upset on the night of the party and that she went to pick Rita up from the party. Third, Daughter and Aunt corroborated Rita's testimony that when Aunt arrived, Rita ran outside and Corona followed. Fourth, Aunt further corroborated Rita's account when she testified that Rita was upset on the way home and that she asked Aunt how girls got pregnant. Finally, Daughter corroborated that Corona was in Rita's room with her that night while Daughter was outside of the room.

¶27 Thus, we are not persuaded by any of Corona's arguments as to the three hallmarks of inherent improbability. We further

note that while these hallmarks "are beneficial, they are not controlling." *State v. Jok*, 2021 UT 35, ¶ 36, 493 P.3d 665; *see also In re S.M.*, 2024 UT App 135, ¶ 32, 557 P.3d 649. "Rather, when weighing the testimony in light of the other evidence, the testimony of the witness must run so counter to human experience that it renders the testimony inappropriate for consideration in sustaining a finding of guilt." *Jok*, 2021 UT 35, ¶ 36 (cleaned up).

¶28    We can find nothing in the record that runs "so counter to human experience that it renders the testimony inappropriate for consideration." *Id.* (cleaned up). Inconsistent testimony, conflicting stories, and varying degrees of credibility are the hallmarks of a trial. The inherent improbability standard is not "satisfied where the appellant raises garden-variety credibility questions, such as which witness to believe, or which version of a witness's conflicting account to believe." *In re S.M.*, 2024 UT App 135, ¶ 33 (cleaned up). What Corona complains of here is not an issue of inherent improbability, but rather an issue of relative credibility. "It is the jury's prerogative to weigh the evidence, infer the material facts from it, and apply the law stated in the jury instructions to the facts." *State v. Bergwerff*, 777 P.2d 510, 511 (Utah Ct. App. 1989); *see also State v. Prater*, 2017 UT 13, ¶ 39, 392 P.3d 398 ("The question of which version of their stories was more credible is the type of question we routinely require juries to answer."); *Robbins*, 2009 UT 23, ¶ 19 (stating that the *Robbins* exception does "not allow defendants to challenge witness testimony for generalized concerns about a witness's credibility" (cleaned up)). Here, the jury found Rita's story to be more credible than Corona's. Obviously, Corona disagrees with that assessment of the evidence, but that does not establish any inherent improbability.

¶29    There was no inherent improbability here, and thus, "Counsel did not perform deficiently because reasonable counsel could have concluded that a *Robbins* motion and a directed verdict

motion would have been futile." *Broadwater*, 2024 UT App 184, ¶ 37; *see also State v. Hart*, 2020 UT App 25, ¶ 20, 460 P.3d 604 ("[C]ounsel's performance is not deficient for declining to make a motion, objection, or request that surely would have failed before the district court."). Accordingly, this claim of ineffective assistance fails.

## II. Mother's Testimony

¶30 Corona next alleges that Counsel was "ineffective for failing to object to improper testimony from [Mother]." At trial, Mother testified that she was "[u]pset and angry" when she found out what Corona did to Rita. She testified she was upset that she "wasn't there for [Rita] to protect her." She explained, "[W]e considered [Corona] like part of the family, and then, you know, to find out that he would do such a thing like that, knowing that he also has a daughter kind of around the same age." Corona argues that Counsel should have objected to this testimony under rule 403 of the Utah Rules of Evidence and that by failing to do so, Counsel rendered ineffective assistance. This claim fails because Corona cannot establish prejudice.

¶31 In an ineffective assistance claim, "we do not need to review the deficient performance element before examining the prejudice element, and if it is easier to dispose of [the] claim on the ground of lack of sufficient prejudice, that course should be followed." *State v. Tapusoa*, 2020 UT App 92, ¶ 17, 467 P.3d 912 (cleaned up). Assuming, without deciding, that Counsel performed deficiently in not objecting to or seeking to exclude Mother's statements, we limit our analysis to the prejudice prong.

¶32 To demonstrate prejudice, Corona must show that "there is a reasonable probability that the case would have had a different outcome had trial counsel not performed deficiently." *State v. Whytock*, 2020 UT App 107, ¶ 28, 469 P.3d 1150. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland v.*

*Washington*, 466 U.S. 668, 694 (1984). In assessing prejudice, we "consider the totality of the evidence before the judge or jury and then ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *State v. Garcia*, 2017 UT 53, ¶ 28, 424 P.3d 171 (cleaned up). "Prejudice analysis is counterfactual. To decide whether a trial affected by error is reasonably likely to have turned out differently we have to consider a hypothetical—an alternative universe in which the trial went off without the error." *State v. Ellis*, 2018 UT 2, ¶ 42, 417 P.3d 86.

¶33 On this issue, Corona cannot establish that he was prejudiced by Counsel's failure to object. If we imagine a counterfactual scenario where Counsel objected to Mother's testimony, and even if we imagine that objection was sustained and the testimony was excluded, there is still not a reasonable likelihood that the outcome here would have been any different.

¶34 "When we examine counsel's alleged errors, we consider the totality of the evidence to determine whether the errors altered the entire evidentiary picture and whether the verdict is supported by the record." *State v. J.A.L.*, 2011 UT 27, ¶ 38, 262 P.3d 1 (cleaned up). The Supreme Court has recognized that some "errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Strickland*, 466 U.S. at 695–96. Here, we are confident that Mother's testimony did not meaningfully alter the evidentiary picture and that the result of the trial would have been the same without it. Mother's testimony was a passing comment in a three-day trial. Her testimony did not speak to the ultimate question of the case, whether Corona's action satisfied the elements of sexual abuse of a child. Instead, her comment centered on the idea that she was upset when she learned about the abuse. It's difficult to imagine how the evidentiary picture would be meaningfully altered for

the jury by a revelation so obvious as the fact that a mother was upset to learn her child was the victim of a crime.

¶35    Just as the mere sentiment of Mother being upset would have been obvious to the jury, all the other information contained in Mother's statements would have come as no surprise. The jury already knew that Rita's family considered Corona to be a part of their family. Rita herself stated in her CJC interview that she called Corona her uncle "because he's like family." Similarly, the jury already knew that Rita and Daughter were the same age. Rita stated in her CJC interview that Daughter "was the same age" as her. And Corona himself confirmed that Rita and Daughter were "the same age." Nothing about Mother's statements would have come as any surprise to the jury, and thus, those statements did not meaningfully alter the evidentiary picture.

¶36    There was abundant evidence in the record from Rita, Aunt, and other people at the party to support the jury's conclusion that Corona was guilty of aggravated sexual abuse of a child. Mother's testimony did not change the evidentiary picture. Thus, Counsel's failure to object to this testimony did not prejudice Corona, and his ineffective assistance of counsel claim fails.

CONCLUSION

¶37    Corona has failed to establish that Counsel's performance was deficient when it comes to his inherent improbability claim, and he has not demonstrated prejudice when it comes to his improper testimony claim. We affirm Corona's convictions.

———————